The next case, number 221465, Barbara Michelle et al. v. Alejandro Mayorkas et al. At this time, would Attorney Drago please introduce himself on the record to begin? Good morning. May it please the Court, I'm Anthony Drago on behalf of the appellants. The case involves a challenge to a request for attorney's fees under the Equal Access to Justice Act. With a few issues, the main one really being whether or not the government's position during the course of litigation was reasonably justified. Several cases outlined the legal standard, one of which was your decision, Judge Lynch, back in Arnoff, where the Court stated that the issue comes down to whether a reasonable person could think that the agency position is correct. And we don't believe it was, and we believe that the District Court abused its discretion by not awarding an aegis fee in this case. Eligibility to adjust status in an immigration case boils down to the last entry that the beneficiary made to this country. Isn't that the whole question in the case, whether you're right about that? The dispositive issue is whether or not that entry made the appellants arriving aliens. That's correct, Your Honor. And so the question is whether there was a reasonable basis for thinking otherwise. Yes. And the government's position is that there was because of the word admit in the, is it MNTA? We call it MTNA, yes, the Miscellaneous Technical Corrections Act, which was created in 1991, well before arriving aliens even came about. That happened in 96. But so, yes, that was the issue, Your Honor. And then am I right that the Fifth Circuit agreed with the government on that position, or am I wrong about that? Well, the Fifth Circuit didn't really agree with it because in this case, and in all these other cases where there were decisions, the government's position was that the appellants, all of these TPS holders, their last entry, the status that they had before they left the United States and when they came back was entered without inspection subject to an order of removal. That's what they said in every case. In the Fifth Circuit, in the Duarte case, the court looked at the MTNA language, which says when you travel as a TPS holder, you shall be admitted in the same status as you were when you left the United States. Shall be, right? But that never happened. It never happened, Your Honor. For all of these years, the U.S. Citizenship and Immigration Service was issuing advanced parole documents, and when these TPS holders came back to the United States of America, they were paroled in. But isn't that an executive decision for the administration that was in turn? That's policy for the agency. The court doesn't make that policy. The court doesn't make the policy, Your Honor, but the agency that reviews the policy, the agencies that makes decisions on all of these cases knows what happens. They know what the policy is. But the question is just whether – I mean, this doesn't – you won in the sense they didn't appeal it. But for the Egypt purpose, was there a plausible argument that because of the text of – is it MTNA is what you – Yes, Your Honor. Because of the text of MTNA, that the right thing to focus on for purposes of the framework is what MTNA says they shall be treated as, not the fact of what their – whether they were inspected when they arrived the second time. I mean, that's just the – we have legal disputes all the time about that. That position seems to have won favor with a number of courts. It didn't with this court. The government chose not to appeal, but I don't quite follow. What is it about it that makes it not a – within the domain of plausibility that makes it so you can't get Egypt? That position did win favor with the Fifth Circuit. I don't think this circuit would have agreed on appeal. The government did appeal. That's not the test for Egypt. No, but I don't – I'm addressing the court's concern about the legal position, right? And so what the government said all along was we're just going to ignore that last entry regardless of what the statute says. No. They said because of MTNA, we're entitled to ignore it. They never said that this last entry was a valid entry. They just ignored it. That's why I don't believe their position was reasonable. They said your last entry doesn't count because when you left the United States, you were subject to an order of removal. But you just keep skipping why legally they were making that argument, which was dependent on MTNA, right? Well, to be honest with you, Your Honor, I think they – I believe the argument was made up. And one of the reasons why I say that – In the briefing, don't they hinge the argument on the text of MTNA? They do. Yes. And I think that's one of the problems. So what you have to say is that is so implausible that they were not justified in relying on it, notwithstanding that the Fifth Circuit agreed with them. And I believe it was implausible, and here's one of the reasons why, Your Honor. If you look at the appendix, the documents that all of these appellants traveled with, which are the advance parole documents, the language in that document tells you what these individual status was when they came back into this country. It's right in the document. And the agency created that. Counsel, please. There are a number of district courts and the Fifth Circuit which ruled in the government's favor. That you disagree with it and that you think this court would disagree with it does not go to the question of whether a reasonable person could think that the agency was justified in making an argument that was in fact accepted by a number of courts. I understand that, and you're correct, Your Honor. It was accepted, but my contention is when you look at those decisions, and, you know, immigration law is a complicated area. When you start looking at the decisions and digging into what really happened, those decisions really never touched upon why these individuals are not arriving aliens. They didn't take that past entry and deal with it. Okay, you disagree that doesn't make the government position unreasonable. Well, the district court said that the government's position didn't make any sense. And so I, following that... But we haven't... Mike... in light of this case law. Because of the case law. And after, yes. I guess I take the point that if there are unreasoned decisions, we don't say that's dispositive against you, right? Decisions that go in favor of the government's position can understandably bear, and you're not saying otherwise. But I don't see anything that says just because some court, even a number of courts, came out one way, that necessarily means the position was substantially justified. If all of those courts goofed in some egregious way, or the briefing didn't apprise them of some obvious point, and they all came out that way not seeing it, then the government isn't entitled to just keep relying on that same position if it truly makes no sense. So I do understand the puzzlement you have in reading a decision by the district court that says this position makes no sense, and then denying each just because there's some district court opinions, if those also make no sense. Okay, but the difficulty that I'm having here is what you're essentially asking us to do is assess the merits of the government's argument to see if it really does have nothing to it. But when we come down to that, I don't see you grappling with what I take to be the merits of the government's argument, which is given that there's a statute, and I think this is Judge Halperin's point, there's a statute which says how courts shall treat them. Yes, Your Honor. The fact that the agency has chosen to have them come in through this other way doesn't necessarily matter as a legal matter how we're supposed to treat them given that the statute says treat them this way. I think that the government misread the statute, and I think that... But that alone does not make it an Egypt problem. Well, to go back to a point that you made, Judge, if you do read the cases, and you're correct, I am really saying I think we need to look at these cases and assess them, right, because there's a stark difference between the decisions. There were three favorable decisions to our position. The other courts ruled differently, but they ruled on different ways. They said that there wasn't jurisdiction. They looked at jurisdictional stripping statutes. So they made the ruling in different ways, and I do think we have to dig into it because I think for the government's position to be reasonable, we really have to look at what were they saying, and the district court did not agree with anything they said, not anything. And so I believe that that's necessary to look at. The Fifth Circuit did, and you can't say the Fifth Circuit delivered an unreasoned decision. There is an extensive discussion there, and it rejects the position that you are taking. They definitely relied on the statutory language, Your Honor, as compared to what actually happened in reality, which was really the crux of my argument all the way through. The advance parole documents speak for themselves, I believe. So turning to the other issue before the court, the award that we did receive was a very small award, and I actually challenged that on this appeal. The reason is this. I don't work for the government. I don't work for a big firm. Just finish this thought. Thank you very much, Your Honor. Some of the tasks I performed, I admit they were menial, but I did the work. And there were six appeals, and it wasn't that I could just take one appeal and do one thing for one appeal and forget the others. I had to take care of all of that business. I had a very small office, and so my contention is that we did win. The judge did make a ruling on that portion of the award. I agree with it. I don't contest the hourly rate that she ruled on. But I do say that the work was done, and I believe since we did get an award that it should be the full award for the time spent. Thank you. Thank you, Your Honor. Thank you, counsel. At this time, will Attorney Larrakis please introduce herself on the record again? May it please the Court, Mary Larrakis on behalf of the United States. This Court should affirm the District Court's decision holding that the government's litigation position here was substantially justified for two primary reasons. First, the legal question before the District Court was novel, and second, all of the other District Courts to have decided this issue agreed with USCIS's litigation position. I believe there was another District Court judge that ruled the same way, correct? There have been many. In Massachusetts, there have been several? Yes, Your Honor. To Plaintiff's point that some of the District Courts ruled on the jurisdictional issue and some of the District Courts ruled on the merits issue, there are several courts that ruled on the merits issue. That was before the District Court. Am I right that before us, as I read your brief, you're not trying to win on the EJIP point based on the jurisdictional issue? You're solely relying on the merits argument as being justified. Is that right? Yes, Your Honor, because that's what the District Court focused on. And that's all we need to win this case, Your Honor. The four District Courts. Can we just get a little bit into the merits? What is plausible about the government's merits argument? Sure, so Plaintiff is right that the last entry is what matters for adjustment of status purposes. Plaintiff's point is that these individuals should be treated like other parolees that are paroled and, therefore, they can adjust status before USCIS. Before you come to that, just one thing that was just confusing to me. In the briefing from the parties and in the District Court, the word as that proceeds as an arriving alien in the parenthetical, do you know what I'm talking about? Continue your question, Your Honor. In the operative provision, it says, as I understand it, if you're before the immigration judge when you're put into removal proceedings, you stay in the control of the immigration judge with respect to your adjustment of status petition. And then there's an exception. If you were put into removal proceedings, quote, or in parenthesis, quote, as an arriving alien. Yes, Your Honor. Just as an ordinary reader of English, that would suggest to me that all that saying is, if when you come in as an arriving alien, that's when you got into removal, which I assume USCIS has handled you coming in at that point. They'd have you rather than the immigration judge. But no one seems to read it that way, so I've just found the whole thing a little bit mystifying. Yes, Your Honor, that's an argument that was not made before the district court, but it's certainly one the government would have liked to make at the district court now, if we could have redone the entire argument, because there is an argument under the regulation that when a person is an arriving alien, matters, right? So if they were an arriving alien. But the way this case has been argued, we just have to pretend that's not what's happening and pretend the word as is not there. I mean, it's a very odd situation to be trying to figure out whether there's a substantially justified argument that might be based on a complete misreading of the statute. Well, it's the regulation, Your Honor. So, yes, Your Honor is right that the government could argue it on this appeal or before the district court. So effectively the government's argument here generates the same outcome as that reading would? Yes, Your Honor. And you get there by saying essentially the status you came in with initially stays with you forever? Yes. And what's the text that permits that to be true, given that you've given up the argument that would most straightforwardly support that textually? It's the word same status, Your Honor. The MATINA says that the individual shall be admitted in the same status. USCIS interprets that word status broadly, as if the circuit has interpreted that word status broadly. The BIA has interpreted the word status to mean standing, state, or condition. And how do we know that's not referring to temporary? Why do you think that doesn't refer to the status of temporary protected status, which is what you most recently had before you arrived? Because, Your Honor, the MATINA applies to people with temporary protected status. So if they didn't want status to have a more broad usage, they would have just used temporary protected status. So by using just the word status, it indicates that it should be broader. And the USCIS has reasonably interpreted the word status to mean something broader than temporary protected status. And does the district court seem to focus on the word admitted? Are you saying that word doesn't really matter in MATINA? No, Your Honor. I believe the Fifth Circuit certainly believes that. So what's the significance of that? Because that's the word that the government seemed to be relying on as key, that the district court thought the government should not have been relying on. And that's because the person's not actually admitted, but instead comes in through parole? That's, I take it, the point your opponent's making. The procedural posture of the individuals coming back into the country is a little complicated, because they came in on an advanced parole document. But the MATINA's statutory language doesn't line up with that particular document. So what's the government's position about that disjunction? The government should not have been issuing this type of travel on an advanced parole document. But for purposes of applying the rules when that has happened, I mean, maybe that's a perfectly good reason not to have done it, but that doesn't help us figure out what to do with the person in which there was the document given so that they were inspected when arrived. You're not disputing that they were inspected upon arrival? No, Your Honor. Right. So that's what I'm trying to figure out. What is the significance of the text in MATINA using the word admitted in the same status that generates plausibly the ruling that you wanted the district court to adopt, but now you don't want anyone to adopt because you haven't appealed it? Yes, Your Honor. So under the Fifth Circuit's ruling, admitted would mean that simply they're not paroled. So you cannot agree with plaintiff's position. You can't be both admitted and paroled. So that's the Fifth Circuit's position, and that's one way. And the idea about that is that, I think to Judge Helpe's point, it's a fiction, but it's a legally required fiction because the statute just tells you that's what you have to do. Precisely, Your Honor. This is all about what the statute says, not what the document says. And so your position is maybe that's wrong, maybe you disagree with it, maybe that's not the best reading of the statute, but it's a perfectly plausible position to take. Absolutely, Your Honor. And given this court's precedent that says that it's perfectly reasonable, that the government's position is substantially justified when the issue is novel, where other reasonable courts have agreed with the government's position, the government must prevail here. Does Your Honor have any more questions about the? I don't. Do you either? No, I don't. Judge Lynch? No, thank you. Thank you, Your Honor. Thank you. That concludes argument in this case.